# UNITED STATES DISTRICT COURT

# WESTERN DISTRICT OF LOUISIANA

# MONROE DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | * | **CRIMINAL NUMBER  17-0274** |
| **VERSUS** | * | **JUDGE TERRY A. DOUGHTY** |
| **CHAD LIGHTFOOT** | * | **MAG. JUDGE KAREN L. HAYES** |

## REPORT AND RECOMMENDATION

Before the undersigned Magistrate Judge, on reference from the District Court, are two motions filed by defendant, Chad Lightfoot:  1) a motion to quash, or an alternative motion in limine [doc. # 68]; and 2) a motion to suppress, or, in the alternative, a motion in limine [doc. # 69].  The motions are opposed.  For reasons stated below, it is recommended that the motions be DENIED.

## Background

On October 25, 2017, a federal grand jury returned a single count indictment against Chad Lightfoot for disaster aid fraud in violation of 18 U.S.C. § 1040(a)(2).  *See* Indictment. On July 24, 2018, defendant filed the instant motions to quash, suppress, or alternatively, in limine.  The government filed its responses to the motions on August 7, 2018.  [doc. #s 74-75]. Defendant did not file a reply, and the time to do so has lapsed.  *See* July 25, 2018, Order [doc. # 70].  Accordingly, the matter is ripe.

## I.    Motion to Quash

In his non-specific motion to quash, defendant argues that, although the government is prosecuting him for fraudulently seeking FEMA assistance associated with an address that was not his "primary residence," neither the indictment, nor the government's proposed jury

instructions provide any suitable basis to define "primary residence," or "principal residence." Defendant reasons that, absent a definition for "primary residence," he cannot be in violation of the statute.

An indictment must be a "plain, concise and definite written statement of the essential facts constituting the offense charged." Fed.R.Crim.P. 7(c). When reviewing a defendant's challenge to an indictment that it fails to state an offense, the court is required to take the allegations of the indictment as true and to determine whether an offense has been stated. *United States v. Crow*, 164 F.3d 229, 234 (5th Cir.1999). "An indictment is sufficient if it contains the elements of the charged offense, fairly informs the defendant of the charges against him, and ensures that there is no risk of future prosecutions for the same offense." *United States v. Thomas*, 348 F.3d 78, 82 (5th Cir.2003). Therefore, "[n]o prescribed set of words are required—the indictment simply needs to allege each element of the crime in a way that allows the accused to prepare his defense and invoke the Double Jeopardy Clause in a subsequent proceeding. *United States v. Franco*, 632 F.3d 880, 884–85 (5th Cir.2011).

To state an offense under 18 U.S.C. § 1040, the government must allege and prove that, (1) defendant made a materially false or fraudulent statement or representation to FEMA; (2) defendant's statement was in connection with a benefit; (3) the benefit was in connection with the Disaster Declaration; and (4) the benefit was a payment, money, or thing of value of the United States. *United States v. Olsen*, 760 F.3d 825, 827–28 (8th Cir.2014).[1]

---

[1] The statute reads, in pertinent part:
(a) Whoever, in a circumstance described in subsection (b) of this section, knowingly . . .

>    (2) makes any materially false, fictitious, or fraudulent statement or representation, or makes or uses any false writing or document knowing the same to contain any materially false, fictitious, or

Here, defendant cannot in good faith contest that each of the elements of the offense are detailed in the indictment. *See* Indictment.[2]  Instead, he argues that the government has not provided a definition of "primary residence," and therefore, the government cannot establish that he made a false statement or representation regarding his "primary residence."  Clearly, however, the charging statute cannot provide definitions for all terms used in all federal programs and applications for benefits.  Accordingly, courts must consult agency sources or even related state

---

fraudulent statement or representation,

in any matter involving any benefit authorized, transported, transmitted, transferred, disbursed, or paid in connection with a major disaster declaration under section 401 of the Robert T. Stafford Disaster Relief and Emergency Assistance Act (42 U.S.C. 5170) or an emergency declaration under section 501 of the Robert T. Stafford Disaster Relief and Emergency Assistance Act (42 U.S.C. 5191) . . .

18 U.S.C. § 1040(a)(2).

[2]  The indictment detailed that,
[b]eginning on or about March 19, 2016 and continuing until on or about May 31, 2016, in the Western District of Louisiana and elsewhere, Defendant, CHAD LIGHTFOOT, did knowingly falsify, conceal, and cover up by trick, scheme, and device a material fact from the Federal Emergency Management Agency ("FEMA") in an application for benefits authorized, transported, transmitted, transferred, disbursed and paid in connection with the Presidential Disaster Declaration for the State of Louisiana (FEMA-4263-DR), effective on or about March 13, 2016, said disaster declaration having been made under the Robert T. Stafford Disaster Relief and Emergency Assistance Act, 42 U.S.C. §§ 5121 et seq., and the benefit referenced above concerned a record, voucher, payment, money, or thing of value of the United States or any department or agency thereof; that is, Defendant knowingly and fraudulently represented that his Monroe, Louisiana property located on 1508 S. 4th Street was his primary residence when he applied for FEMA assistance when, in fact, it was not his primary residence and therefore did not qualify for FEMA relief in order to enrich himself.

(Indictment, ¶ II).
The indictment further explained the manner and means that defendant allegedly defrauded the government, as well as the specific acts in furtherance of the fraud. *Id*., ¶¶ III-IV.

law.  *See United States v. Fontenot*, 665 F.3d 640, 645 (5th Cir.2011) (looking to other sections of loan application and state law to discern definition of "debt," for purposes of a charge under federal false statement statute).

In its response to defendant's motion to suppress, the government noted that the website where defendant applied for FEMA funds inquired if the residence was the defendant's primary residence:



Specifically, the on-line form asked the applicant:  "is this your primary residence, where you live more than six months out of the year?"  The response options included:

a. Yes (Primary)

    i.    A home is the primary residence if the applicant:
        1. Lives in the home more than six (6) months of the year
        2. Lists it as their home address on their Federal Tax Return
        3. Files a homestead exemption at this address

    ii.   Primary also includes if the access route to your primary home, that you own/co-own with others and maintain/co-maintain with others, was affected.

b. No (Secondary

    i.    A home is a secondary home if it is a:
        1. Secondary residence
        2. Vacation home.

(Gov't Opp. Memo. [doc. # 75]).

Similarly, the regulations define "primary residence" as "the dwelling where the applicant normally lives, during the major portion of the calendar year; or the dwelling that is required because of proximity to employment, including agricultural activities, that provide 50 percent of the household's income."  44 C.F.R. § 206.111.

Finally, a Fact Sheet issued by FEMA on April 28, 2016, showed disaster applicants how to appeal.[3]  Specifically, the Fact Sheet stated,

> [i]f you're a homeowner or renter, FEMA can reconsider you for grants if you provide documents that prove the damaged structure was your primary residence. You can prove primary occupancy with utility bills, a driver's license or a copy of your lease. You cannot receive federal disaster assistance for secondary or vacation homes.

*Id*.

Of course, the types of evidence listed by FEMA to establish a primary residence are some of the

---

[3]  FEMA Fact Sheet, https://www.fema.gov/media-library-data/1466022018263-9c4e98c2fb2596d17584226c66d0ed75/FS023EveryLouisianaDisasterApplicantHastheRighttoAppealHeresHow.pdf (last visited on 8/28/2018).

types of documents that defendant is charged with falsifying in support of his application. *See* Indictment. Insofar as evidence of the definition of "primary residence," is required, the Fifth Circuit has recognized that eligibility requirements contained in FEMA publications may suffice to establish same. *United States v. Breland*, 366 Fed. Appx. 548, 555 (5th Cir.2010).

Accordingly, the court finds that there is a sufficient basis for the government to establish that defendant made a materially false or fraudulent statement or representation to FEMA regarding his primary residence.

Defendant alternatively asks the court to grant a motion in limine[4] barring the government from asserting that the subject property was not his principal residence because he would be unfairly prejudiced thereby. Rule 403 of the Federal Rules of Evidence provides that, "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed.R.Evid. 403.

Defendant has not established that he will be unfairly prejudiced by the government's introduction of evidence regarding "primary residence," or evidence that he acted fraudulently in applying for government assistance on the subject residence. While the evidence may not be favorable to his cause, defendant has made no showing that introduction of the evidence would *unfairly* prejudice him. Clearly, in order to prosecute defendant, the government will need to

---

[4] Succinctly stated,

[a] motion in limine is a motion made prior to trial for the purpose of prohibiting opposing counsel from mentioning the existence of, alluding to, or offering evidence on matters so highly prejudicial to the moving party that a timely motion to strike or an instruction by the court to the jury to disregard the offending matter cannot overcome its prejudicial influence on the jurors' minds.

*O'Rear v. Fruehauf Corp.*, 554 F.2d 1304, 1306 n.1 (5th Cir.1977) (citation omitted).

adduce evidence of defendant's alleged wrongdoing, which, in this case, will require evidence that he made a materially false or fraudulent statement or representation regarding his "primary residence."

## II.    Motion to Suppress

By this motion, seeks to suppress three classes of documents obtained by the government pursuant to its investigation in this case: defendant's cell phone records, certain utility records, and his children's school records.[5]  Alternatively, defendant urges the court to grant a motion in limine prohibiting the introduction of the documents at trial because they are prejudicial.

The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures."  U.S. CONST., AMEND. IV.  The protections of the Fourth Amendment extend to the states via the Fourteenth Amendment.  *Dunaway v. New York*,  442 U.S. 200, 207, 99 S.Ct. 2248, 2253-2254 (1979) (citation omitted).  The courts deter Fourth Amendment violations by excluding evidence obtained as a result of the transgression.  *See United States v. Gibbs*, 421 F.3d 352, 357 (5th Cir. 2005) (citation omitted).

A key limitation to the foregoing principle, however, is that Fourth Amendment rights may not be vicariously asserted.  *United States v. Powell*, 732 F.3d 361, 374 (5th Cir. 2013) (citing *Alderman v. United States,* 394 U.S. 165, 174, 89 S.Ct. 961 (1969).  That is to say, a "defendant seeking to suppress evidence under the Fourth Amendment must demonstrate that his

---

[5]  In the context of a motion to suppress, the defendant carries the burden of proving, by a preponderance of evidence, that the challenged evidence was obtained in violation of his Fourth Amendment rights.  *United States v. Smith*, 978 F.2d 171, 176 (5th Cir. 1992) (citing inter alia, *Rakas v. Illinois*, 439 U.S. 128, 131 n. 1, 133-34, 99 S.Ct. 421, 424 n. 1, 425, 58 L.Ed.2d 387 (1978)).

or her individual rights were violated." *Id*. (citing *Rakas v. Illinois*, 439 U.S. 128, 134, 99 S.Ct. 421 (1978)). Toward that end, the defendant must show that he or she had a legitimate expectation of privacy in the area searched. *United States v. Ibarra*, 948 F.2d 903, 905 (5th Cir. 1991) (citing *inter alia Rawlings v. Kentucky,* 448 U.S. 98, 104, 100 S.Ct. 2556, 2561 (1980)). Defendant bears the burden of establishing standing. *United States v. Hernandez*, 647 F.3d 216, 219 (5th Cir. 2011) (citation omitted).[6] Standing is a question of law. *Ibarra supra* (citation omitted).

In determining whether a defendant has a reasonable expectation of privacy sufficient to contest the validity of a search, the court inquires "(1) whether the defendant is able to establish an actual, subjective expectation of privacy with respect to the place being searched or items being seized, and (2) whether that expectation of privacy is one which society would recognize as reasonable." *United States v. Finley*, 477 F.3d 250, 258-59 (5th Cir. 2007) (citations omitted). Relevant factors include,

> whether the defendant has a [property or] possessory interest in the thing seized or the place searched, whether he has a right to exclude others from that place, whether he has exhibited a subjective expectation of privacy that it would remain free from governmental intrusion, whether he took normal precautions to maintain privacy[,] and whether he was legitimately on the premises.

*Id*.

In 2013, the Fifth Circuit recognized that there was no expectation of privacy in cell site records, and that the Fourth Amendment did not bar the government from obtaining historical cell tower data for cell phones used at the time of a crime. *Hewitt v. United States*, No. 08-167,

---

[6] Although the Supreme Court has merged the "standing" requirement into the substantive Fourth Amendment analysis itself, the Fifth Circuit continues to discuss the Fourth Amendment's "personal" interest requirement in terms of standing. *United States v. Maldonado*, 999 F.2d 1580, 1993 WL 307857, *3, n2 (5th Cir. 1993) (unpubl.).

2018 WL 3853708, at *5 (N.D. Tex. July 25, 2018), R&R adopted, 2018 WL 3845232 (N.D. Tex. Aug. 13, 2018) (citing *In re Application of the U.S. for Historical Cell Site Data*, 724 F.3d 600, 611-15 (5th Cir. 2013)).

Only two months ago, however, the Supreme Court distinguished its prior precedent regarding the voluntary disclosure of information to third parties, and determined that individuals retain a reasonable expectation of privacy in their cell phone information. *Carpenter v. United States*, ___ U.S.___ , 138 S.Ct. 2206, 2220 (2018). Accordingly, the government's acquisition of cell-site records constitutes a search subject to Fourth Amendment protection, thereby necessitating a warrant supported by probable cause to obtain such information. *Id.*

The government concedes that, in the wake of the *Carpenter* decision, it was required to obtain a warrant to secure defendant's historical cell-site records. However, it maintains that suppression is not warranted in this case because it acted in good faith under then existing law when it obtained the records pursuant to an order via § 2703 of the Stored Communications Act ("SCA"), 18 U.S.C. §§ 2701-2711. Consistent with its argument, the government cited a Fourth Circuit decision, which held that,

> [w]hile *Carpenter* is obviously controlling going forward, it can have no effect on [the instant] case. The exclusionary rule's sole purpose . . . is to deter future Fourth Amendment violations. Thus, when investigators act with an objectively reasonable good-faith belief that their conduct is lawful, the exclusionary rule will not apply. Objectively reasonable good faith includes searches conducted in reasonable reliance on subsequently invalidated statutes.

*United States v. Chavez*, 894 F.3d 593, 608 (4th Cir.2018) (internal citations and quotation marks omitted).[7]

---

[7] Similarly, the Eleventh Circuit declined to suppress cell cite data following *Carpenter*, where the government complied with the requirements of the SCA to obtain orders to compel cell site records, when, at the time they did so, the procedure did not implicate the Fourth Amendment. *United States v. Joyner*, ___ F.3d ___ , 2018 WL 3853443, at *3 (11th Cir. Aug. 14, 2018).

Here, defendant does not contest the government's representations that it obtained the

historical cell evidence pursuant to an SCA order issued prior to the *Carpenter* decision.

Accordingly, the government acted in good faith, and suppression is not warranted. *Chavez,*

*supra*.

With regard to utility records, the government represented that,

Special Agent Jerry Coleman with DHS OIG issued administrative subpoenas to
Entergy and the City of Monroe, Louisiana Utility Manager for energy and water
records related to the property located at 1508 S. 4th Street, Monroe, Louisiana.
The records obtained from Entergy and the City of Monroe demonstrate that the
Defendant held no accounts with the utility services, and services had not been
provided to the residence since on or about 2014.

(Gov.'t Opp. Memo., pg. 8 [doc. # 75]).

Furthermore,

[a] Grand Jury subpoena was issued to Cox Communication for records relating to
a Cox Communication bill submitted by the Defendant to FEMA to establish
proof of residency.  The records received from the Grand Jury subpoena have
been provided in discovery.  A witness will testify concerning the lack of service
from Cox Communications to the residence at 1508 S. 4th Street, Monroe,
Louisiana. However, the Government will introduce records received relating to a
Cox Communication account in the name of Arthur Blackwell from New Orleans
that bears the same account number as the bill submitted by the Defendant.

*Id*. at pgs. 8-9.[8]

In *United States v. Miller*, the Supreme Court emphasized that

the Fourth Amendment does not prohibit the obtaining of information revealed to
a third party and conveyed by him to Government authorities, even if the
information is revealed on the assumption that it will be used only for a limited
purpose and the confidence placed in the third party will not be betrayed.

*United States v. Miller*, 425 U.S. 435, 443, 96 S.Ct. 1619, 1624 (1976); *see also United States v.
Sahley*, 526 F.2d 913, 916 (5th Cir.1976) (bank customer has no standing to challenge the
validity of an agency subpoena directed to his bank for production of its transactions records with
him)

---

[8]  The government did not provide the court with copies of the subpoenas.  However,
defendant did not contest the government's representations.

In the absence of a Fourth Amendment interest, the general rule is that "the issuance of a subpoena to a third party to obtain the records of that party does not violate the rights of a defendant, even if a criminal prosecution is contemplated at the time of the subpoena is issued." *Id*. Similarly, as an investigative body, a grand jury's authority to issue subpoenas is not constrained by probable cause. *Sahley, supra*. Rather, a grand jury's subpoena power is analogous to that of an agency administrative subpoena. *Id*. In fact, a grand jury subpoena is not a "seizure" at all within the meaning of the Fourth Amendment. *United States v. Mara*, 410 U.S. 19, 21, 93 S.Ct. 774, 775–76 (1973)).

To circumvent the demise of his suppression argument presaged by longstanding case law, defendant argues that *Carpenter* should be extended beyond historical cell phone location data to information retained by other service-related industries, including utility records. In *Carpenter*, however, the Court plainly emphasized that its decision: 1) was a "narrow one," 2) did not disturb application of *United States v. Miller*, and 3) did not address "other business records that might incidentally reveal location information." *Carpenter, supra*. Accordingly, defendant's argument is without merit.[9]

Defendant further argues that he believes that the government issued subpoenas for the school records of his children. He argues that the government should be called upon to show that the records were obtained in conformity with the Family Educational Rights and Privacy Act ("FERPA") 20 U.S.C. §§ 1232g, et seq. and the Individuals with Disabilities Education Act

---

[9]  Even if the court were to agree with defendant that *Carpenter* should be extended to utility records, the evidence still would be admissible under the "good-faith" exception to the exclusionary rule. *See* discussion, *supra*; *see also United States v. McLean*, No. 09-270, 2010 WL 376381, at *3 (W.D. Tex. Jan. 25, 2010), aff'd, 419 Fed. Appx. 473 (5th Cir.2011) (even if evidence had been improperly obtained via administrative subpoena, it was subject to good faith exception to exclusionary rule).

("IDEA") 20 U.S.C. §§ 1400 et seq., such that the confidential records of his children "were not seized in an inappropriate manner lacking probable cause under Constitutional principles."

In its response, the government agreed that it,

> issued a trial subpoena in accordance with Rule 17(c) to St. Bernard Parish School Board, Central Office, to obtain school attendance records for children the Defendant stated were residing in the residence of 1508 S. 4th Street, Monroe, Louisiana during the time of the flood. The trial subpoena requested only attendance records for the children listed in the Defendant's FEMA application. The Government received the attendance records and such records have been provided to the Defendant in discovery.

(Gov.'t Response, pgs. 9-10 [doc. # 75]).

The court observes that there is no "basis for judicial imposition of the exclusionary rule for a statutory violation when Congress has not provided that remedy." *United States v. Guerrero*, 768 F.3d 351, 358 (5th Cir.2014) (citations omitted). Here, defendant has failed to establish that either the FERPA or the IDEA provides for the exclusion of any records or evidence that were obtained in violation of each act's provisions. *See Downs v. Holder*, 758 F.3d 994, 998 (8th Cir.2014) (in the context of removal, exclusionary rule is not available to remedy a statutory violation of the FERPA).

In any event, the FERPA's implementing regulations explicitly authorize disclosure by an agency or institution in order to comply with a lawfully issued subpoena. 34 C.F.R. § 99.31(a)(9)(i). Likewise, although the IDEA contemplates parental consent before the disclosure of personally identifiable information, disclosure is authorized without consent pursuant to a lawfully issued subpoena. *See* 34 C.F.R. § 300.622(a) (referencing 34 C.F.R. § 99).

In sum, defendant has not established that the government's trial subpoena issued to his children's school violated any provisions of the FERPA and the IDEA, or that if it did, that exclusion is warranted.

Finally, defendant alternatively argues that the court should grant a motion in limine because the potential prejudice stemming from the personal nature of the records outweigh their probative value.  At this time, however, the evidence is potentially relevant to show that defendant's primary residence was somewhere other than what he represented to FEMA. Furthermore, the government represented that at trial, "all personal identification information will be redacted including the names of the students." (Gov.'t Response, pgs. 10-11 [doc. # 75]). In addition, any  testifying witness will refer to the students only by their initials.  *Id*.  The government's proposed precautionary steps adequately address defendant's privacy concerns.

## Conclusion

For the above-stated reasons,

IT IS RECOMMENDED that defendant's motions to quash, suppress, or alternatively, in limine [doc. #s 68 & 69] be DENIED.

Under the provisions of 28 U.S.C. §636(b)(1)(C) and FRCP Rule 72(b), the parties have **fourteen(14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court.  A party may respond to another party's objections within **fourteen (14) days** after being served with a copy thereof.  A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing.  Timely objections will be considered by the District Judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL**

**FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

In Chambers, at Monroe, Louisiana, this 30th day of August 2018.

KAREN L. HAYES
UNITED STATES MAGISTRATE JUDGE

14