UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
MONROE DIVISION

UNITED STATES OF AMERICA   CASE NO.  3:17-CR-00274-01

VERSUS         JUDGE TERRY A. DOUGHTY

CHAD LIGHTFOOT (01)     MAGISTRATE JUDGE HAYES

RULING

 Pending before the Court is Defendant Chad Lightfoot's ("Lightfoot") *pro se* Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside or Correct Sentence [Doc. No. 174] and Amended Motion to Vacate [Doc. No. 185]. Lightfoot based his motion on various claims, which include allegations of Brady violations, the admission of 404(b) evidence, alleged prosecutorial misconduct, and the legality of his sentence, all of which are meritless. The only claim that is not procedurally barred is the ineffective assistance of counsel. Upon review of the entire record, the Court has determined that this matter can be decided without an evidentiary hearing. The Court also finds that the Lightfoot is not entitled to conduct discovery in this matter. For the following reasons, the Court denies his motions.

## I. FACTUAL AND PROCEDURAL HISTORY

 Lightfoot acquired property located at 1508 South Fourth Street in Monroe, Louisiana in 2012 through a quitclaim deed for $401. [Doc. No. 155, ¶ 6]. He did not claim a homestead exemption as to that property, and he listed New Orleans mailing addresses at the Ouachita Parish Tax Assessor. [Doc. No. 157, pp. 358-364].

 On March 13, 2016, after severe flooding in Ouachita Parish in March 2016, the Federal Emergency Management Agency (FEMA) declared a disaster and made federal assistance available. [Doc. No. 157, p.152; Doc. No. 155, ¶ 7]. On March 19, 2016, Lightfoot submitted an

electronic application seeking relief in which he claimed that he suffered a loss at the Monroe property as a result of the March flood. [Doc. No. 157, pp.153-156].

In his application, Lightfoot represented the Monroe property as his "primary residence." [Doc. No. 157, p. 155]. He claimed that his wife and children were living in the house in Monroe. [Doc. No. 155, ¶ 8]. After submitting his application, but before the FEMA-mandated property inspection, Lightfoot made a police report and claimed that the Monroe property had been burglarized. Lightfoot told the responding officer that the Monroe property was a rent home that he was in the process of remodeling. He also told the officer that he resided in Chalmette, Louisiana. [Doc. No. 157, p. 387; Doc. No. 155, ¶ 13].

Three days later, the FEMA inspection occurred. [Doc. No. 157, p. 258]. During the inspection, Lightfoot asserted that the home was his primary residence. [*Id*., p. 267]. To establish that he had lived in the house, Lightfoot showed the inspector a state-issued identification card (ID) with the Monroe property as his address. [*Id*., 157, pp. 260-261]. Lightfoot obtained this ID in Metairie, Louisiana the day before the scheduled inspection. [*Id*., p. 430]. At the time, Lightfoot had a valid Louisiana driver's license with a New Orleans-area address. [*Id*., p. 429].

When the inspector entered the Monroe property, he observed missing sheet rock, visible studs, and an apparent waterline. [*Id*., p. 266]. However, he saw no personal property. Lightfoot explained that he had filed a police report because the property had been damaged by thieves after he and his family evacuated and that those thieves had stolen everything in the house. [*Id*., pp. 261-262]. FEMA determined Lightfoot qualified for $23,684 in assistance: $12,325 for home repairs, $9,339 for personal property, and $2,020 for rental assistance. [*Id*., p. 170].

However, he appealed the award. [*Id*., p. 173]. As a part of his appeal of the award, Lightfoot submitted a notarized affidavit that was signed under penalty of perjury as well as an

estimate that stated that a total of $115,669 was needed "in order to rebuild our home." [*Id*., pp. 184-187]. He also included a copy of the ID card that listed the Monroe property as his address. [*Id*., p. 187]. He later supplemented this appeal with a second estimate seeking $122,500 for repairs. [*Id*., p. 194].

Lightfoot's appeals triggered a second inspection by a more experienced "appeal inspector." [*Id*., p. 176]. The inspector did not see signs of flooding and suspected that the Monroe property was not Lightfoot's primary residence. [*Id*., pp. 176, 282-297].

FEMA asked Lightfoot to provide utility bills for the three months prior to the flood to demonstrate that he lived in the Monroe property prior to the disaster. [*Id*., p. 182]. In response, Lightfoot provided a bill from Cox Communications showing cable service at the Monroe property in March 2016. [*Id*., pp. 194, 195]. However, the bill was fraudulent as Cox did not serve Monroe. [*Id*., p. 369]. The defendant admitted at trial that the bill was fraudulent. [Doc. No. 159, p. 654).

FEMA referred the case to the Department of Homeland Security, Office of the Inspector General for investigation. [Doc. No. 158, p. 514). Shortly thereafter, Lightfoot orchestrated the creation of three fraudulent affidavits.

First, Lightfoot contacted Thomas Malloy ("Malloy") whom he had met while both were in jail. They devised a plan in which Malloy's wife, Glenda, would execute an affidavit asserting that Lightfoot was living at the Monroe property at the time of the flood. [*Id*., pp. 457-462, 492-500]. Lightfoot drafted the affidavit and sent it to Glenda. [*Id*., pp. 464, 490-492]. Glenda Haas then typed up the affidavit, signed it, and sent it, along with five copies and a copy of her picture ID, to Lightfoot's sister in Texas. [*Id*., p. 500]. Lightfoot paid Glenda $1,000 to create the false

affidavit and would send her another $1,000 after she testified falsely at his trial. [*Id.*, pp.461, 463, 491, 494].

Lightfoot also solicited Malloy to discourage witnesses from testifying against him. [*Id.*, pp. 466, 472-473]. Malloy was a felon with convictions for armed robbery, using and carrying a firearm during and in relation to an armed robbery, and assault resulting in great bodily injury— and Lightfoot encouraged him to get witnesses off the case either by force or by talking to them. [*Id.*, pp. 472, 469]. Both Malloy and Glenda Hass testified at trial as government witnesses.

Before trial, Lightfoot's attorney provided the government with affidavits prepared by Christopher Jones ("Jones") and Earlansia Thomas ("Thomas") [Doc. No. 162, p. 38]. Jones, who had been incarcerated with Lightfoot, perfected an affidavit in which he asserted that he had assisted Lightfoot at the Monroe property for almost a year; that power was provided by two generators; that he helped Lightfoot install "sheet rock, plumbing, wiring, flooring, tubs, sinks, appliances, light fixtures, etc.;" that the Monroe property was "operational and livable," not abandoned; and that Lightfoot's family lived with him at the Monroe property. [Doc. No. 155 ¶¶ 20-21]. The affidavit further provided that after the floods, the door to the Monroe property had been kicked in and the property "looted and vandalized," Lightfoot called the police, and, after the officer left, Jones helped Lightfoot clean up. [*Id.*, ¶ 21].

Another similar affidavit was signed by Thomas, who had also served time with Lightfoot. Thomas asserted that he had assisted Lightfoot at the Monroe property for almost two years; that Lightfoot had been living at the residence and had installed "new lumber, new sheet rock, plumbing, new wiring, new light fixtures, new flooring, and new appliances, etc."; that the Monroe property was "operational and livable" prior to the flood; and that, after the flood, the Monroe property was looted and vandalized. [*Id.*, ¶ 22].

These two last affidavits were the subject of a pro se motion for new trial in which Lightfoot asserted that the government had intimidated these two witnesses not to testify on his behalf. At the hearing on this motion for new trial, Jerry Coleman ("Agent Coleman"), Special Agent with the Department of Homeland Security, testified that upon receipt of the affidavits allegedly prepared by Jones and Thomas, he and other law enforcement officers made attempts to contact them. [Doc. No. 162, p. 20]. Thomas confirmed that the information in the affidavit was false. [*Id*., p. 21]. Agent Coleman testified that he told Jones to be honest with them and advised him that providing false statements was a violation. [*Id*., pp. 22, 30]. Both prepared signed sworn statements providing that the information in the affidavits was not true. [*Id*., p. 22].

Neither testified at trial. Thomas was subpoenaed for trial but did not testify. [*Id*., p. 18, 39]. At the motion for new trial, the attorney testified that he did not call Thomas because "Mr. Thomas told me that he did not think his testimony would be helpful to Mr. Lightfoot." [*Id*., p. 40]. There was no indication if Jones were served properly. [*Id*., p. 18].

The federal grand jury returned a single-count indictment charging Lightfoot with engaging in a fraudulent scheme in connection with major disaster or emergency benefits, in violation of 18 U.S.C. § 1040(a)(2). [Doc. No. 1]. An attorney with the Federal Public Defender's Office was appointed to represent Lightfoot. After Lightfoot filed a motion to relieve that attorney and to represent himself, the attorney was terminated, and Walter Caldwell ("Caldwell") was appointed as stand by counsel. [Doc. Nos. 29, 36]. Caldwell was later appointed as lead counsel. [Doc. No. 56].

Prior to trial, the Government filed a notice of intent to introduce other crimes evidence pursuant to Fed. R. Evid. 404(b) in which it referred to two prior instances of criminal conduct. [Doc. No. 76]. After Lightfoot objected and the Government responded, the Court permitted

introduction of only one incident, the defendant's conviction in Orleans Parish on September 12, 2018, of bank fraud, identity fraud, and monetary instrument abuse. [Doc. Nos. 83, 89, 90].

After a four-day trial, Lightfoot was found guilty as charged by a jury. [Doc. No. 133]. Lightfoot subsequently filed a pro se motion for new trial. [Doc. No. 139]. On the day of sentencing, a hearing was held on that motion, which was denied. [Doc. No. 149]. Lightfoot was sentenced to 71 months' imprisonment followed by five years of supervised release. [Doc. No. 153].

The issues are briefed, and the Court is prepared to issue a ruling.

## II.     LEGAL STANDARD

Section 2255 of Title 28 of the United States Code provides that a federal prisoner serving a court-imposed sentence "may move the court which imposed the sentence to vacate, set aside or correct the sentence." 28 U.S.C. § 2255(a). Only a narrow set of claims are cognizable on a Section 2255 motion. The statute identifies four bases on which a motion may be made: (1) the sentence was imposed in violation of the Constitution or laws of the United States; (2) the court was without jurisdiction to impose the sentence; (3) the sentence exceeds the statutory maximum sentence; or (4) the sentence is "otherwise subject to collateral attack." *Id.* A claim of error that is neither constitutional nor jurisdictional is not cognizable in a Section 2255 proceeding unless the error constitutes "a fundamental defect which inherently results in a complete miscarriage of justice." *United States v. Addonizio*, 442 U.S. 178, 185 (1979) (quoting *Hill v. United States*, 368 U.S. 424, 428 (1962)).

When a Section 2255 motion is filed, the district court must first conduct a preliminary review. "If it plainly appears from the motion, any attached exhibits, and the record of prior

proceedings that the moving party is not entitled to relief, the judge must dismiss the motion...." Rules Governing Section 2255 Proceedings, Rule 4(b).

An evidentiary hearing must be held "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b). No evidentiary hearing is required if the prisoner fails to produce any "independent indicia of the likely merit of [his] allegations." *United States v. Edwards*, 442 F.3d 258, 264 (5th Cir. 2006) (quoting *United States v. Cervantes*, 132 F.3d 1106, 1110 (5th Cir. 1998)).

Ultimately, the petitioner bears the burden of establishing his claims of error by a preponderance of the evidence. *Wright v. United States*, 624 F.2d 557, 558 (5th Cir. 1980). For certain "structural" errors, relief follows automatically once the error is proved. *Brecht v. Abrahamson*, 507 U.S. 619, 629-30 (1993). For other "trial" errors, the court may grant relief only if the error "had substantial and injurious effect or influence" in determining the outcome of the case. *Id.* at 637-38 (citation omitted); *see also United States v. Chavez*, 193 F.3d 375, 379 (5th Cir. 1999) (applying *Brecht* in a Section 2255 proceeding). If the court finds that the prisoner is entitled to relief, it "shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate." 28 U.S.C. § 2255(b).

Defendants challenging the performance of their attorneys may bring those challenges under 28 U.S.C. § 2255 without overcoming the procedural bar. In *Massaro v. United States*, 538 U.S. 500, 509 (2003) the Supreme Court held that "ineffective-assistance-of-counsel claims may be brought in a collateral proceeding under § 2255, whether or not the petitioner could have raised the claim on direct appeal." *Id.* at 504. See *United States v. Ramos*, 801 F. App'x 216, 226 (5th Cir. 2020) (citing *Massaro* for proposition that "[t]he Supreme Court has emphasized that a

28 U.S.C. § 2255 motion is the preferred method for raising allegations of ineffective assistance of counsel).

To prevail on a claim that legal representation fell short of the assistance guaranteed by the Sixth Amendment, a convicted defendant must meet the two-pronged test established in *Strickland v. Washington*, 466 U.S. 668 (1984). The defendant must show that his attorney's actions were objectively unreasonable and that his attorney's unreasonable actions resulted in prejudice. *United States v. Valdez*, 973 F.3d 396, 402 (5th Cir. 2020) (reiterating two-prong *Strickland* test); *United States v. Phea*, 953 F.3d 838, 841 (5th Cir. 2020) (same).

The former component of the test authorizes only "highly deferential" judicial scrutiny, requiring the defendant to overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy. *Anderson v. Collins*, 18 F.3d 1208, 1215 (5th Cir. 1994) (citing *Strickland*, 466 U.S. at 689). To meet the second prong of *Strickland*, the defendant must show that counsel's deficient performance resulted in actual prejudice to the defendant. Thus, the defendant must show there is a "reasonable probability that, but for counsel's errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 695. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Id*. at 694. The defendant must establish both prongs of this test. *Carter v. Johnson*, 131 F.3d 452, 463 (5th Cir. 1997) ("Failure to prove either deficient performance or actual prejudice is fatal to an ineffective assistance claim."); *Armstead v. Scott*, 37 F.3d 202, 210 (5th Cir. 1994) ("A court need not address both components of the inquiry if the defendant makes an insufficient showing on one.").

### III.   ANALYSIS

The Court believes that except for the ineffective assistance of counsel claim, all of Lightfoot's allegations are procedurally barred due to his failure to raise these on appeal and failure to satisfy the two-part "cause" and "prejudice" test for why the claims were not raised on appeal. Even though the Court finds these claims to be procedurally barred and meritless, each will be analyzed below.

#### A.   *Brady* Violation

Lightfoot's first claim is an alleged *Brady* violation. Lightfoot asserts that he was "denied the fundamental fairness at trial by the Government's withholding or failure [to] disclose *Brady* material." [Doc. No. 174-1, p. 3]. Specifically, Lightfoot asserts that the Government failed to provide him with *Brady* exculpatory material concerning Thomas and Glenda Haas Malloy (collectively "Malloy"). The materials concern the Malloys' financial problems, Glenda Haas' mental health, and promises by the government of leniency.

Pursuant to *Brady v. Maryland*, 373 U.S. 83 (1963), "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." 373 U.S. at 87. To establish a *Brady* violation, a defendant must prove that (1) the prosecution suppressed evidence; (2) the evidence was favorable to the defendant because it was either exculpatory or impeaching; and (3) the evidence was material. *Brady*, 373 U.S. at 87; *United States v. Edwards*, 442 F.3d 258, 264 (5th Cir. 2006). Although *Brady* addressed only exculpatory evidence, this doctrine has been expanded to include impeachment evidence as well as exculpatory evidence. *Thompson v. Cain*, 161 F.3d 802, 806 (5th Cir. 1998).

Although Lightfoot asserts that information regarding the Malloys' financial problems, Glenda Haas' mental health struggles, and promises of leniency by the government were not made readily available to him during the trial, evidence from the trial transcript indicates otherwise. Lightfoot testified that Thomas Malloy disclosed to him that Glenda Haas was suffering from psychological issues and that the Malloys were having financial problems. [Doc. No. 159, pp. 633, 634]. Additionally, Thomas Malloy disclosed during cross examination that he was familiar with the criminal justice system, that he had a drug problem, and that he cashed out his wife's retirement to pay debts incurred because of his drug problem. [Doc. No. 158, pp. 480, 488, 490]. He also stated that he did expect some leniency for testifying against Lightfoot [*Id.*]. Lightfoot's attorney specifically asked Glenda Haas about her husband cashing out her retirement plan, and she testified that she was testifying in hopes of not being charged with obstruction in federal court and/or for leniency purposes. [*Id.*, pp. 504, 505, 510]. This is evidence enough to show that Lightfoot was aware of this information.

The Government additionally asserts that it was not obligated to discover and provide information that was obtainable by Lightfoot. *United States v. Portillo*, 969 F.3d 144, 182 (5th Cir. 2020), *cert. denied sub nom. Pike v. United States*, 141 S. Ct. 1275 (2021), and *cert. denied*, 141 S. Ct. 1275 (2021) (holding that because there was no indication that prosecution team had access to witness's psychiatric, psychological, and counseling records, prosecution did not violate *Brady* by failing to turn those documents over to defendant); *Kutzner v. Cockrell*, 303 F.3d 333, 336 (5th Cir. 2002) ("*Brady* does not obligate the State to furnish a defendant with exculpatory evidence that is fully available to the defendant through the exercise of reasonable diligence); *Thompson v. Cain*, 161 F.3d 802, 807 (5th Cir. 1998) (providing that the prosecution is under no duty to furnish defendant with information that is readily accessible to the defense);

*United States v. Wilson*, 116 F.3d 1066, 1982 (5th Cir. 1997) ("[A] prosecutor has no duty under *Brady* to investigate the mental state of its witnesses in order to uncover impeachment evidence for the defense."). This Court agrees.

### B.  The Admission of 404(b) Evidence

Lightfoot next asserts that the Court should not have allowed the introduction of his prior conviction. [Doc. No. 174-1, p. 23]. This Court believes this argument is procedurally barred. Alleged violations of the Federal Rules of Evidence are not cognizable on collateral review unless there is a denial of fundamental fairness implicating due process. *Woods v. Estelle*, 547 F.3d 269, 271 (5th Cir. 1977) ("The mere violation of evidentiary rules does not in itself invoke habeas review."); *United States v. Needham*, Criminal Action No.11-185, 2018 WL 4431377, at *7 (W.D. LA. Sept. 13, 2018) (finding that violation of Fed. R. Evid. 404(b) is not cognizable in a § 2255 motion). Lightfoot has introduced no evidence indicating that there was a denial of fundamental fairness implicating his due process rights in these proceedings.

The Government asserts that the claim is baseless because it filed a notice of intent to introduce other crimes evidence pursuant to Fed. R. Evid. 404(b) in which it referred to two prior instances of criminal conduct. [Doc. No. 76]. The Court then permitted introduction of only one incident. That incident was Lightfoot's conviction in Orleans Parish on September 12, 2018 of bank fraud, identity fraud, and monetary instrument abuse. [Doc. Nos. 83, 89, 90]. The prior conviction was based on Lightfoot opening a checking/savings account with a fraudulent Louisiana ID. with his photograph and a victim's identifying information. He applied for a Visa credit card with the same victim's information, and when he applied for the credit card, he used his residential New Orleans address. [Doc. No. 76, pp. 2, 3].

Lightfoot attempted to subpoena the Assistant District Attorney who prosecuted the case in Orleans Parish to show that he was the subject of a conspiracy. [Doc. No. 97]. Lightfoot also indicated that he wanted to call Larry Wright and John Hawkins ("Hawkins") as witnesses to show that he did not use a forged check to open the bank account. [Doc. No. 101]. The Court subsequently ruled that Lightfoot would not be allowed to issue a trial subpoena to any attorneys from the Orleans Parish District Attorney's Office. [Doc. No. 104]. Lightfoot then filed a motion to reconsider. [Doc. No. 117]. The Court denied that Motion [Doc. No. 118], noting that its previous ruling had only addressed the testimony of the Orleans Parish ADA. In its Order denying the Motion, the Court found that "Hawkins' testimony is inadmissible as another attempt to make a collateral attack on a valid prior conviction."

The Government called a witness to testify as to the prior conviction in state court at trial, Raynell Theard ("Theard") with the Louisiana State Police. He investigated Lightfoot's 2016 attempt to open the bank account and line of credit with false identification. The name in which he attempted to open the account was Hawkins. [Trial Tr. At 339]. On cross, Lightfoot's counsel asked Theard about a power of attorney that Hawkins gave Lightfoot and about the nature of the relationship between Lightfoot and Hawkins. [Trial. Tr. 402]. Lightfoot testified that the prior conviction was about a $9 check and that he had power of attorney of Hawkins. [Doc. No. 159, p. 660].

The Government argues that Lightfoot has not proven any error related to the Court allowing introduction of this evidence at trial. The Court agrees. The admission of the evidence related to his prior conviction of bank fraud, opening a bank account with a fraudulent identification card with his photo but another's name, was relevant to proving that Lightfoot had fraudulent intent. In the case that was at issue in the trial, Lightfoot obtained a Louisiana

identification card prior to his inspection by FEMA to prove his residency. The Rule 404(b) evidence was admissible to show Lightfoot's knowledge and absence of mistake in obtaining an identification card to accomplish the fraud committed in the case.

The Court further believes that it was correct in holding that any testimony of the ADA and Hawkins was not relevant. The Court of Appeals for the Fourth Circuit of Louisiana stated "Furthermore, the existence of a power of attorney was likewise not relevant to the issue of whether Lightfoot committed the crimes of monetary instrument abuse, forgery, bank fraud or fraudulent acquisition of a credit card." *State v. Lightfoot*, 2018-KA-0336, 2018 WL 6536999, at * 13, 14 (La. App. 4 Cir. 12/12/18).

The issue was not only presented to that appeals court, but it was also raised on a post-conviction motion in the United States District Court for the Eastern District of Louisiana. The report and recommendation recommending denial of the motion labelled any evidence from Hawkins as irrelevant. *Lightfoot v. Gusma*n, Civil Action No. 19-12552, 2020 WL 6827705, at *7 (E.D. La. Sept. 25, 2020).

This Court, the Louisiana Fourth Circuit Court of Appeals, and the United States District Court for the Eastern District of Louisiana all found this evidence to be irrelevant to the bank fraud conviction. Lightfoot has presented no evidence proving otherwise.

This Court holds that Lightfoot's claims regarding admissions of his prior conviction as well as the exclusion of the testimony of the ADA and other witnesses are not cognizable, are procedurally barred, and are meritless.

### C.  Challenges to his prior conviction

Lightfoot argues that he should be resentenced because this prior conviction will soon be invalidated. The presentence investigation report shows that the defendant received three criminal history points for the Orleans Parish Bank Fraud conviction. [Doc. No. 155, ¶ 47].

The Government argues that this argument is not supported in fact by his prior conviction. The Court agrees.

The history of Lightfoot's prior conviction goes as follows:

1.  On December 12, 2018, the Louisiana Fourth Circuit Court of Appeal affirmed his convictions and sentences. *State v. Lightfoot*, 2018-KA-0336, 2018 WL 6536999 (La. App. 4 Cir. 12/12/18).

2.  The Louisiana Supreme Court denied his application for writ of certiorari. *State v. Lightfoot*, 2019-KA-055 (La. 2019), 273 So.3d 313.

3.  He filed a federal application for habeas corpus relief in the Eastern District of Louisiana that was dismissed with prejudice on November 20, 2020. *Lightfoot v. Gusman*, Civil Action No. 19-12552, 2020 WL 6827705, (E.D. La. Sept. 25, 2020), *report and recommendation adopted at Lightfoot v. Gusman*, Civil Action No. 19-12552, 2020 WL 68277532 (E.D. La. Nov. 20, 2020).

This is evidence that the conviction has not been overturned. As this Court has previously noted, the defendant cannot collaterally attack his previous conviction. [Doc. No. 104, p. 6; Doc. No. 118, p. 4]. His prior conviction was properly used as 404(b) evidence and was properly included in the determination of his criminal history.

### D.  Ruling and Hearing on Prosecutorial Misconduct Claims

Lightfoot alleges claims of prosecutorial misconduct that this Court found meritless when it denied Lightfoot's pro se motion for a new trial [Doc. No. 139] [Denial, Doc. No. 149]. Lightfoot is also challenging the manner in which the Court handled the hearing on that motion. The Government argues that these claims are procedurally barred and meritless. The Court agrees.

The following issues were brought up by Lightfoot in the instant motion: (1) that the Government intimidated witnesses; (2) that Lightfoot was entitled to a new attorney for purposes of the motion for a new trial; (3) that Lightfoot was not afforded the proper hearing for his motion for new trial; and (4) that Lightfoot's attorney was ineffective in handling the allegations for intimidation of witnesses, which was the subject for the motion for new trial. Each of these will be analyzed separately.

### 1.  The Government intimidated witnesses.

The issue of whether the Government intimidated witnesses is presented by Lightfoot in the instant motion and was presented by Lightfoot in his previous motion for new trial. "The Sixth Amendment guarantees a criminal defendant the right to present witnesses to 'establish his defense without fear of retaliation against the witness by the government.'" *United States v. Girod,* 646 F.3d 304, 310 (5th Cir. 2011) (quoting *United States v. Dupre*, 117 F.3d 810, 823 (5th Cir. 1997)). Furthermore, "[s]ubstantial government interference with a defense witness' free and unhampered choice to testify violates [the] due process rights of the defendant." *United States v. Anderson*, 755 F.3d 782, 792 (5th Cir. 2014).  However, the government may warn potential defense witnesses of the repercussions of false testimony. *Girod*, 646 F.3d at 312 ("Presenting the potential defense witnesses with the facts of the investigation and the crimes

charged does not amount to witness intimidation; there must be evidence of threats or intimidation.") (citations omitted); *United States v. Viera*, 839 F.2d 1113, 1115 (5th Cir. 1988 ("A prosecutor is always entitled to attempt to avert perjury and to punish criminal conduct.") (citation omitted).

Jones and Thomas were both contacted by an agent prior to testifying. Neither of them were threatened. The Court stated when denying the motion for new trial that "there's no evidence that Mr. Thomas was threatened to be put in jail or anything like that if he testified. [Doc. No. 162, p. 45]. The Court sees no reason to alter its prior ruling. This claim is meritless.

### 2. Lightfoot was entitled to a new attorney for purposes of the motion for a new trial.

Lightfoot next asserts that he was entitled to a new attorney for purposes of his motion for new trial. His argument is that the Court should have appointed an attorney for his motion. In the motion itself, Lightfoot asserted that his attorney had a conflict and that he needed a new attorney. The Court denied the motion to appoint counsel at the hearing. A defendant does have a Sixth Amendment right to the assistance of counsel at the motion for new trial during the post-trial, pre-appeal period. *McAfee v. Thaler*, 630 F.3d 383, 393 (5th Cir. 2011). However, "[a]lthough an indigent defendant has a Sixth Amendment right to be represented by counsel in his criminal proceedings, he is not entitled to demand a different appointed counsel in the absence of showing good cause." *United States v. Contreras*, 558 F. App'x 400, 401 (5th Cir. 2014); see also *United States v. Young*, 482 F.2d 993, 995 (5th Cir. 1973) ("Although an indigent criminal defendant has a right to be represented by counsel, he does not have a right to be represented by a particular lawyer, or to demand a different appointed lawyer except for good cause. Unless a Sixth Amendment violation is shown, whether to appoint a different lawyer for an indigent criminal defendant who expresses dissatisfaction with his court-appointed counsel is

a matter committed to the sound discretion of the district court.") (citation omitted). The Court did not find good cause for the appointment of a new attorney for Lightfoot, and it sees no reason to alter or amend its previous ruling in any way, as Lightfoot has presented no evidence indicating that the Court should not have denied the original motion for new counsel.

### 3. Lightfoot was not afforded the proper hearing for his motion for new trial.

The record reflects that a hearing was held. The Court sees no reason to analyze this argument. [Doc. No. 162].

### 4. Lightfoot's attorney was ineffective in handling the allegations for intimidation of witnesses, which was the subject for the motion for new trial.

The Government asserts that Lightfoot's claim for ineffective assistance of counsel is the only claim within this motion that is not procedurally barred. The Court agrees.

Lightfoot's allegations are that his attorney was ineffective in handling the aforementioned "intimidation of witnesses." The argument, which mirrors the argument Lightfoot raised in the motion for new trial, is that his attorney had a conflict of interest because he did not immediately report the threats to the Court. [Doc. No. 174-1, pp. 19, 20].

Lightfoot's attorney told the Court at the hearing for the motion for new trial that he did not contact the Court about the alleged threats to the witnesses because "The appropriate means or vehicle that I would use to bring that to the attention of the Court would be that individual because my statements would simply be hearsay." The attorney further stated, "And I felt that the most appropriate vehicle was to bring out that particular issue at trial because it would have been the most beneficial to the defendant at trial to bring out whatever allegations of intimidation in the case." [Doc. No. 162, p. 36].

In multiple representation cases, prejudice is presumed if an actual conflict of interest adversely affected the attorney's performance. *Beets v. Scott*, 65 F.3d 1258, 1265 (5th Cir. 1995); *Cuyler v. Sullivan*, 446 U.S. 335 (1980). However, the *Strickland v. Washington* test rather than the *Cuyler* test applies if a defendant contends that a conflict of interest was caused not because of multiple representation but because of a conflict between the "attorney's personal interest and that of his client." *Beets v. Scott*, 65 F.3d at 1260. Lightfoot has established no conflict, which is what this Court has previously held. [*Id.*, p. 46]. Lightfoot has also not shown that his attorney's actions were unreasonable or prejudicial as required by *Strickland*.

Lightfoot's attorney did state at the hearing on the motion for new trial that Jones called and told him about an encounter that he had with law enforcement. The attorney only advised Jones insofar as he told him to contact a lawyer if he were having concerns about the prosecution, and he told him to appear at trial to testify if he wanted to do something about the alleged intimidation. [*Id.*]. The Court found no conflict at the hearing, and the Court finds no conflict now.

Lightfoot also asserts that his attorney was ineffective because he provided affidavits of witnesses to the government before the time allotted in Fed. R. Crim. P. 26.2. [Doc. No. 174-1, p 26]. The Government argues in its response to Lightfoot's motion for new trial, the affidavits were provided as part of reciprocal discovery. Because these affidavits were similar to Glenda Haas' affidavit, the Government investigated them. Lightfoot's attorney testified at the hearing that two weeks prior to the hearing pursuant to local rules and because of the reciprocal discovery, he provided the affidavits to the government. [Doc. No. 162, p. 38]. The Government asserts that Lightfoot's counsel following ethical obligations concerning discovery was not ineffective. The Court agrees.

18

Lightfoot's attorney's actions in the entire proceeding were ethical and reasonable. He followed his obligations for reciprocal discovery, he advised Jones properly regarding the alleged intimidation, and he represented Lightfoot in the most appropriate manner. The Court finds this argument meritless.

### E.  Ineffective Assistance of Counsel Claims

As stated above, the Government asserts that Lightfoot's claim for ineffective assistance of counsel is the only claim that is not procedurally barred. The Court agrees. Although some of Lightfoot's ineffective assistance claims are discussed above, the Court will now analyze Lightfoot's claims that his attorney was ineffective in the investigation of Lightfoot's case, and whether Lightfoot was denied effective assistance of appellate counsel.

Lightfoot argues that his attorney did not fully investigate the details of the SBA loan. [Doc. No. 174-1 p. 18]. The standard for ineffective assistance claims regarding investigation from *Strickland* are as follows:

> [C]ounsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments.

466 U.S. at 691.

The trial transcript reflects that Lightfoot's attorney presented numerous questions about the SBA loan. He questioned government witnesses on cross examination about the loan, and Lightfoot testified about the loan. Lightfoot has introduced nothing showing what his attorney could have presented regarding the loan that he did not present at trial.

The Court finds that Lightfoot has presented nothing to show that his attorney did not fully investigate details of the SBA loan.

Lightfoot also asserts that that his attorney on appeal was ineffective for failing to raise issues relating to the 404(b) evidence, the motion for new trial, the motion for appointment of new trial counsel, conflict of interest, witness tampering, and the lack of counsel at critical stage. The Government asserts that Lightfoot raises the allegation to circumvent the procedural bar. [Doc. No. 174-1 at 2].

The two-part *Strickland* test applies to claims of ineffective assistance of counsel on appeal. *United States v. Phillips*, 210 F.3d 345, 348 (5th Cir. 2000). To render effective assistance of counsel, appellate counsel need not raise every non-frivolous issue on appeal. *United States v. Williamson*, 183 F.3d 458, 462 (5th Cir. 1999). "Instead, to be deficient, the decision not to raise an issue must fall 'below an objective standard of reasonableness.'" *Phillips*, 210 F.3d at 348 (quoting *Strickland*, 466 U.S. at 688). To determine whether appellate counsel was deficient, the Court thus must consider whether the omitted challenge "would have been sufficiently meritorious such that [the attorney] should have raised it on appeal." *Phillips,* 210 F.3d at 348; *Higgins v. Cain*, 720 F.3d 255, 265 (5th Cir. 2013) (finding that appellate attorney was not ineffective "given the weaknesses in those arguments, it is at least arguable that a competent attorney could decide to forgo raising them").

An attorney has an ethical obligation to refuse to prosecute frivolous appeals. *McCoy v. Court of Appeals of Wisconsin, Dist. 1*, 486 U.S. 429, 436, (1988). The Court finds that Lightfoot's arguments are frivolous, and therefore, the appointed counsel acted properly in choosing not to raise these frivolous arguments on appeal.

### F.   Whether Lightfoot is entitled to conduct discovery and whether he is entitled to a hearing or appointment of an attorney

Lightfoot requests discovery and a hearing. Under Rule 6(a) of the Rules Governing Proceedings in the United States District Courts under Section 2255 of Title 28, United States

Code, a petitioner may seek discovery "if, and to the extent that, the judge in the exercise of his discretion and for good cause shown grants leave to do so, but not otherwise." Lightfoot has not shown good cause, and the Court finds that he is not entitled to discovery.

Lightfoot requests a hearing. Evidentiary hearings on § 2255 motions are not necessary unless the defendant shows some indicia of viable issues in his motion. *United States v. Harrison*, 910 F.3d 824, 826-827 (5th Cir. 2018) (holding that an evidentiary hearing as to a § 2255 motion is not required "if (1) the movant's claims are clearly frivolous or based upon unsupported generalizations, or (2) the movant would not be entitled to relief as matter of law, even if his factual assertions were true." *United States v. Bartholomew*, 974 F.2d 39, 41 (5th Cir. 1992) (holding that no hearing is necessary as to a § 2255 motion if "the motion, files, and records of the case conclusively show that the prisoner is entitled to no relief"). The Court finds that Lightfoot has presented nothing showing that there are some viable issues within his motion. Therefore, he will not be granted a hearing.

Lastly, Lightfoot requests appointment of an attorney. A defendant filing a § 2255 motion is generally not entitled to appointment of an attorney. *Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987) ("[T]he right to appointed counsel extends to the first appeal of right, and no further."); *United States v. Garcia*, 689 F.3d 362, 364 (5th Cir. 2012) ("[T]here is no constitutional entitlement to appointed counsel in postconviction relief proceedings...."). The Court will not appoint an attorney for Lightfoot.

## IV.    CONCLUSION

For the reasons stated above,

**IT IS ORDERED** that Defendant Chad Lightfoot's ("Lightfoot") *pro se* Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside or Correct Sentence [Doc. No. 174] and Amended Motion to Vacate [Doc. No. 185] are **DENIED** and **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that Lightfoot's request for an evidentiary hearing is **DENIED**.

**IT IS FURTHER ORDERED** that Lightfoot's request for discovery is **DENIED**.

**IT IS FURTHER ORDERED** that Lightfoot's request for appointment of counsel is **DENIED**.

MONROE, LOUISIANA, this 29th day of November 2021.

TERRY A. DOUGHTY
U.S. DISTRICT JUDGE